J-S62012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMIEL JOHNSON, | |
| Appellant | No. 1831 EDA 2013 |

Appeal from the PCRA Order entered May 20, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0801541-2004

BEFORE:  ALLEN, OLSON, and OTT, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED SEPTEMBER 26, 2014**

Jamiel Johnson ("Appellant") appeals *pro se* from the order denying his petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. sections 9541-46.  We affirm.

The pertinent facts are as follows:

On August 24, 2003, [at] approximately 9:30 p.m., Harrison Wiggins, a/k/a Slim, the decedent, (hereinafter "Harrison") went to a crack house located on 1206 South 57th Street, Philadelphia, owned by Dana Wallace (hereinafter "Dana").  [Appellant] arrived at Dana's house shortly after Harrison.  Dana, Geraldine Brooks (hereinafter "Geraldine"), Wanda Ibrahim (hereinafter "Wanda"), Jason, Jerome, Crystal and Angelo were all present in the house when [Appellant] arrived.

At approximately 4:30 a.m., Dana and Geraldine left the house to buy drugs.  At that time, Jerome and Wanda were upstairs in the back room, Jason and a young lady were in another bedroom, Crystal and Angelo were in another bedroom, Harrison was downstairs in the dining

room and [Appellant] was sitting on a couch in the living room.

Shortly after Dana left, Jerome went to buy drugs. Wanda, who remained upstairs in the back bedroom, overheard an argument and heard somebody say, "look, you got to leave," and another person responded "Dana said I could stay." Then the other voice again said, "look, you got to go now." Then the other person said, "If you keep bothering me I'm going to cut your fucking head off." Within a couple of minutes, Wanda heard what sounded like the furniture being bumped around followed by the sound of glass breaking.

Immediately thereafter, Dana and Geraldine returned to the house to find the front door locked. Dana banged on the door and after five to ten minutes of banging on the door, [Appellant] opened the door. Dana and Geraldine entered the house and [Appellant] asked Dana to call 911 and asked for an ambulance but not the police. He then stated, "I think I killed Old Head."

At that point, Wanda made her way downstairs and on her way out of the door she observed [Appellant] standing in the middle of the living room and Harrison in the dining room with one leg extended straight out, the other bent with his hands on his head moaning and moving from side to side. Harrison was completely saturated in blood almost down to his waist. Dana left the living room, went upstairs, and when he returned downstairs, [Appellant] was gone.

Officer Milligan testified that at approximately 6:26 a.m. she arrived at 1206 South 57th Street, Philadelphia. Upon entering the house [s]he observed Harrison lying on the floor in the dining room covered in a large amount of blood. Officer Milligan noticed broken glass all over the floor near Harrison's body and a piece of glass wrapped in a rag in a corner. At that time, Officer Milligan sent all of the individuals in the house outside where they were detained by Officer Singleton, another officer who had arrived on the scene. Officer Toughill, who arrived on the scene at approximately 6:30 a.m., questioned the individuals who had been in the house. After speaking with the witnesses, Officer Toughill learned that the

suspect was a black male named Jamiel wearing a black doo rag, black shirt and black pants. [She] also learned that a female wearing a red jacket left the scene. At that point, Officer Toughill looked down Thomas Avenue and saw a woman fitting that description. The woman was brought back to the scene for questioning and identified as Wanda Ibrahim.

Officer [John] Taggett photographed the crime scene and recovered a roll of toilet paper with a red stain found in the bathroom, a door handle with a red stain removed from the interior side of the front storm door, three pieces of mirror with a red stain found in the dining room and several other items. The items found in Dana's house were transmitted to the Criminalistics Laboratory for analysis. Latent prints were lifted from a red stained piece of mirror found in the dining room. The prints were determined to be [Appellant's] fingerprints. The results of the Criminalistics analysis revealed that [Appellant's] DNA was on the piece of toilet paper and a swab of stain taken from the door handle.

Harrison was pronounced dead at 7:28 a.m. at the Hospital of the University of Pennsylvania. Doctor Ian Hood, the medical examiner, testified that Harrison died from multiple stab and slash wounds and the manner of death was homicide. He testified that seven slash wounds were about the forehead, face and cheeks and one stab wound was in the right side of the neck which severed the jugular vein. Harrison also had several small scratches and superficial incised wounds about the neck, back, shoulders, upper arm and his right thumb. Dr. Hood testified that [those] wounds are consistent with an implement such as [a] shard of glass rather than a knife.

An arrest warrant was issued for [Appellant] and the police made several attempts to apprehend [him] in Philadelphia. [Appellant] was not apprehended until February 29, 2004, in Memphis, Tennessee. At trial, [Appellant] testified that four days before the murder he went to Memphis, Tennessee and was not in Philadelphia at the time of the murder. He also testified that he learned of the murder from family members who told him that he was accused of committing the murder.

- 3 -

*Commonwealth v. Johnson*, 919 A.2d 289, 290-92 (Pa. Super. 2006) (citation omitted).

Based upon the above facts, a jury convicted Appellant of first-degree murder and possessing an instrument of crime. Thereafter, the trial court sentenced Appellant to the mandatory term of life in prison without the possibility of parole for the murder conviction, as well as a concurrent eleven to forty-eight months for the possessing an instrument of crime conviction.

Appellant filed a timely appeal to this Court in which he raised the following issues: 1) a challenge to the sufficiency of the evidence supporting his murder conviction; 2) a claim that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce allegedly exculpatory mental health records; and 3) a claim that the trial court erred in concluding that Appellant was competent to stand trial. Finding that the trial court correctly addressed and rejected each issue, this Court adopted the trial court's opinion as its own in affirming Appellant's judgment of sentence. *See Johnson*, *supra*. On October 24, 2007, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Johnson*, 934 A.2d 1276 (Pa. 2007).

Appellant filed a *pro se* PCRA petition on March 26, 2008, but later withdrew it. On October 1, 2008, Appellant filed another *pro se* PCRA petition, as well as an amendment to that petition on March 18, 2009. On November 12, 2009, the PCRA court appointed counsel. After receiving several continuance requests, the PCRA court removed PCRA counsel, and

appointed new counsel. Ultimately, Appellant requested the right to proceed *pro se*. After conducting a **Grazier**[1] hearing, the PCRA court permitted Appelant to proceed *pro se*. Thereafter, Appellant supplemented his *pro se* PCRA petition.

On February 8, 2013, the Commonwealth filed a motion to dismiss Appellant's PCRA petition. On March 27, 2013, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. After being granted a continuance, Appellant filed a response on May 14, 2013. By order entered May 20, 2013, the PCRA court dismissed Appellant's petition. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues verbatim in his handwritten brief:

> (1) Should [Appellant] be awarded an arrest of judgment on the charges of Murder in the First Degree and PIC where [the Commonwealth] did not have corpus delecti to prove that [Appellant] is guilty of [these charges] beyond a reasonable doubt, thus [trial counsel] lacked effective assistance and [the trial court and the PCRA court are] stripped of personal jurisdiction?
>
> (2) Should above relief be granted against above cause to adhesion [sic] of [the Commonwealth] proceeding without bill of particulars based on unclear first degree murder (in part) and third degree murder (wholly) statutes because they don't specify the conduct of either crime equating no elements, no factors, thus the statutes are void for vague[ness] [sic], overbroad, and has caused arbitrary

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

and discriminatory enforcement by commitment and bounding orders of Magistrates O'Brien and Deleon [sic] or [Appellant] wasn't put on notice by the Legislature, thus there is no [controversy], assuredly no subject-matter jurisdiction?

(3) [] Was [the trial court] uncan[n][o]y [sic] and [the Commonwealth and trial counsel] unprofessional when they instructed the jury on the lesser included offense of third degree murder that's inapplicable where the lesser-included offense of third degree murder is recklessness,- (wanton) a willful disregard of an unjustified . . . high risk that . . . would result in death or serious bodily injury . . . ., -a callous mistake, and a greater offense of third degree murder is, 'hate, spite, or ill will,' and first degree murder is specific intent to kill while the evidence only shows the question was was [sic] the killing done with malicious intent or the malicious and specific intent, (or voluntary manslaughter/within the court's charge)[.] [T]hus there is no corpus delecti for the lesser included offense of third degree murder violating [Appellant's] Equal Protections and Due Process rights, therefore [Appellant] is entitled to a reversal of the first degree murder conviction, vacation of the life without parole sentence, and a remand to the [trial] court for a new trial with instructions on charging the trial jury only on the greater offense of third degree murder and first degree murder?

(4) [] Did [the trial court, the Commonwealth, and trial counsel] apply the wrong standards of [Pa.R.Crim.P.] 600 excludable time in determining whether [Appellant's] Sixth Amendment speedy trial rights were violated pre-trial upon his 600 and "Sixth" Amendment motion than the constitutional standard of all court official's behavior whom are responsible in bringing [Appellant] to trial in a timely manner?

(5) [] [S]hould [Appellant] be awarded a discharge from custody where [the trial court and the PCRA court] forgot about a primary (mandatory) authority, Article [1], § 11(,1) Pennsylvania Constitution, if "the Sixth Amendment don't apply to PCRA proceedings, as-(in) speedy trial to the claim of (re-)sentencing where they unnecessarily delayed in ruling on the [PCRA] petition for 4¾ years

causing gross inadequate communication of [Appellant] and his (11-age, Jafar) son [sic]?

(6) [] [S]hould [Appellant] be awarded a reduction of sentence where [the trial court] failed to protect [Appellant's] liberty at stake where [the Commonwealth and trial counsel] failed to advise [Appellant] to openly plea to third degree murder than go to trial on the theory of self-defense and theory of first degree murder when the evidence on [its] body and face is third degree murder?

(7) [] [S]hould the Court take Judicial Notice [of] all the records of the Court below which purport the facts and circumstances connecting to [Appellant's] claims of his third-party Fifth Amendment (and Fourth and Fourteenth) rights being violated by Detective(s) [sic] Booker not reading the Commonwealth witnesses their Fifth Amendment rights; the police complaints a double hearsay; Counsel John Doe's miscounseled consent to wavier of extradition trial and no warrant of rendition mispresided [sic] by Judge Jane Doe; of [the PCRA court's and PCRA counsel's] compulsion of [Appellant] by bringing up a voluntarily waived claim of false DNA at trial, and of [the PCRA court] committing fraud when [it] states in [its] opinion that [Appellant] did not prove by a preponderance of the evidence that he is entitled to relief [under the PCRA]?

(8) [] [S]hould [Appellant] be awarded an arrest of judgment and a discharge from custody despite [the fact that Appellant] admitted to the crime [during the] post-conviction phase, when the confession was brought on by subterfuge?

*See* Appellant's Brief at 8-9 (citations and footnotes omitted).

This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Halley***, 870 A.2d 795, 799 n.2 (Pa. 2005). The PCRA

court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Carr***, 768 A.2d 1164, 1166 (Pa. Super. 2001). Moreover, a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1104 (Pa. Super. 2001).

To be eligible for post-conviction relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors or defects in 42 Pa.C.S.A. section 9543(a)(2), and that the issues he raises have not been previously litigated. ***Commonwealth v. Koehler***, 36 A.3d 121, 131 (Pa. 2012). An issue has been "previously litigated" if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or if the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence." ***Koehler***, 36 A.3d at 131-132; 42 Pa.C.S.A. § 9544(a)(2). If a claim has not been previously litigated, the petitioner must prove that the issue was not waived. An issue will be deemed waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post[-]conviction proceeding." ***Id.*** at 132; 42 Pa.C.S.A. § 9544(b).

Moreover, to the extent Appellant challenges the effectiveness of prior counsel, we note the following: To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id.** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. **Id.** at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id.** Counsel cannot be deemed ineffective for failing to pursue a meritless claim. **Commonwealth v. Loner**, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*), *appeal denied*, 852 A.2d 311 (Pa. 2004).

In its Pa.R.A.P. 1925(a) opinion, the PCRA court initially notes that the lack of specificity in Appellant's Rule 1925(b) statement results in waiver of all of his claims on appeal, explaining:

> It is well settled that when the trial court orders an appellant to submit a 1925(b) Statement, it is a crucial

component of the appellate process. Pa.R.A.P. 1925(b) requires that the statement of issues complained of shall be concise and set forth only those rulings or errors that [an] appellant intends to challenge. This rule guards against lengthy and incoherent statements that impede appellate review. Issues not raised in accordance with the provisions of Pa.R.A.P. 1925(b) are waived. Although the number of issues, standing alone, is not grounds for finding such waiver, the issues raised in the 1925(b) Statement must be "non-redundant" and "non-frivolous."

It is also well settled that when the trial court orders an appellant to submit a 1925(b) Statement, the statement must indicate, with *specificity*, the error to be addressed on appeal. This rule guards against vague statements which require the Court to guess which issues are being raised on appeal. Such vague and nonspecific 1925(b) Statements do not provide enough for the Court to conduct a meaningful review of the issues, and are the functional equivalent of no 1925(b) Statement at all. Furthermore, even if by chance the trial court correctly guesses the issues [an appellant] raises on appeal and writes an opinion pursuant to that supposition, the issues are still waived.

Here, the Court and the Commonwealth had to literally guess what issues [Appellant] was seeking to raise in his handwritten PCRA Petitions. The Court, understanding that [Appellant] proceeds *pro se*, went to great lengths to scour a voluminous record to discern what issues [Appellant] might be raising, both in the underlying PCRA Petition and this appeal. This is not the Court's usual custom. Even if the Court did guess [Appellant's] PCRA claims, all of them are waived on appeal for his failure to comply with Pa.R.A.P. 1925(b).

PCRA Court Opinion, 8/28/13, at 7-9 (citations omitted).

We could affirm the PCRA court's dismissal of Appellant's PCRA petition on this basis alone. **See generally In re A.B.**, 63 A.3d 345 (Pa. Super. 2013). Nevertheless, the PCRA court, "as best as it could discern," listed

- 10 -

sixteen claims raised by Appellant in his Rule 1925(b) statement. PCRA Court Opinion, 8/28/13 at 7. The PCRA court then addressed Appellant's claims, finding them either previously litigated, waived, or otherwise without merit. Our review of the record supports the PCRA court's conclusions. Thus, to the extent that Appellant has properly raised and preserved any of his appellate issues, we adopt the Honorable Leon W. Tucker's August 28, 2013 opinion as our own in disposing of Appellant's appeal.

Here, our appellate review is hampered for several reasons. First, we agree with the trial court that Appellant did not raise some of his issues with the requisite specificity in his Rule 1925(b) statement. Thus, the PCRA court did not address them, and they are inappropriately being raised for the first time on appeal. **See generally** Pa.R.A.P. 302(a). Moreover, although Appellant's handwritten brief superficially complies with the Pennsylvania Rules of Appellate Procedure as to the contents of an appellate brief, Appellant fails to separate his supporting argument as to each issue, Pa.R.A.P. 2119(a), and within the argument section of his brief he raises a myriad of claims not raised in his statement of questions involved. **See** Pa.R.A.P. 2116(a). Finally, a majority of Appellant's allegations of trial or PCRA court error, and ineffective assistance of counsel, amount to no more than bare assertions, and therefore are undeveloped. **See Commonwealth v. Tielsch**, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal); **Commonwealth v. Thomas**, 783

A.2d 328, 333 (Pa. Super. 2001) (explaining that claims of ineffectiveness cannot be raised in a vacuum).

For the above reasons, we affirm the PCRA court's order denying Appellant's PCRA petition.

PCRA Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014

FILED

AUG 28 2013

Post Trial Unit

FILED

AUG 28 2013

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH
OF PENNSYLVANIA

v.

JAMIEL JOHNSON

COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT

CP-51-CR-0801541-2004

SUPERIOR COURT NO.

1831 EDA 2013

**OPINION**

LEON W. TUCKER, J.                                      DATE: August 25, 2013

## I.    PROCEDURAL HISTORY

This matter comes before the Court on appeal from a formal dismissal of Jamiel

Johnson's (hereinafter referred to as "Johnson") Post-Conviction Relief Act Petition ("PCRA").

The instant Court served as the reviewing PCRA Court for this matter; the Honorable Kathryn

Streeter-Lewis presided over the jury trial in this matter. Judge Streeter-Lewis has since retired

from the bench.

## II.    FACTS

The Court restates the procedural history and facts of this case as stated in the June 2006

Trial Court Opinion:

> On March 16, 2004, Jamiel Johnson, (hereinafter "defendant") was arrested and
> charged on August Term, 2004, Bill No. 154. The Commonwealth proceeded on
> charges of murder in the first degree, murder in the third degree and possessing
> instruments of crime. At trial, prior to closing arguments, defense counsel
> requested the charge of voluntary manslaughter. On September 21, 2005, the
> defendant was tried by a jury and found guilty of murder in the first degree and
> possessing instruments of crime. On November 2, 2005, the defendant was
> sentenced to life in prison without parole on the charge of murder in the first
> degree and 11-48 months on the charge of possessing instruments of crime. All
> sentences to run concurrent to each other. Post sentence motions were denied.

### Facts

On August 24, 2003, [at] approximately 9:30 p.m., Harrison Wiggins, a/k/a/ Slim, the decedent, (hereinafter "Harrison") went to a crack house located on 1206 South 57th Street, Philadelphia, owned by Dana Wallace (hereinafter "Dana"). The defendant arrived at Dana's house shortly after Harrison. Dana, Geraldine Brooks (hereinafter "Geraldine"), Wanda Ibrahim (hereinafter "Wanda"), Jason, Jerome, Crystal and Angelo were all present in the house when the defendant arrived.

At approximately 4:30 a.m., Dana and Geraldine left the house to buy drugs. At that time, Jerome and Wanda were upstairs in the back room, Jason and a young lady were in another bedroom, Crystal and Angelo were in another bedroom, Harrison was downstairs in the dining room and the defendant was sitting on a couch in the living room.

Shortly after Dana left, Jerome went to buy drugs. Wanda, who remained upstairs in the back bedroom, overheard an argument and heard somebody say, "look, you got to leave," and another person responded "Dana said I could stay." Then the other voice again said, "look, you got to go now." Then the person said, "If you keep bothering me I'm going to cut your fucking head off." Within a couple of minutes, Wanda heard what sounded like the furniture being bumped around followed by the sound of glass breaking.

Immediately thereafter, Dana and Geraldine returned to the house to find the front door locked. Dana banged on the door and after five to ten minutes of banging on the door, the defendant opened the door. Dana and Geraldine entered the house and the defendant asked Dana to call 911 and asked for an ambulance, but not the police. He then stated "I think I killed Old Head."

At that point, Wanda made her way downstairs and on her way out the door she observed the defendant standing in the middle of the living room and Harrison in the dining room with one leg extended straight out, the other bent with his hands on his head moaning and moving from side to side. Harrison was completely saturated in blood almost down to his waist. Dana left the living room, went upstairs, and when he returned downstairs the defendant was gone.

Officer Milligan testified that at approximately 6:26 a.m. he arrived at 1206 South 57th Street, Philadelphia. Upon entering the house he observed Harrison lying on the floor in the dining room covered in a large amount of blood. Officer Milligan noticed broken glass all over the floor near Harrison's body and a piece of glass wrapped in a rag in a corner. At that time, Officer Milligan sent all of the

2

individuals in the house outside where they were detained by Officer Singleton, another officer who had arrived on the scene. Officer Toughill, who arrived on the scene at approximately 6:30 a.m., questioned the individuals who had been in the house. After speaking with the witnesses, Officer Toughill learned that the suspect was a black male named Jamiel wearing a black doo rag, black shirt and black pants. He also learned that a female wearing a red jacket left the scene. At that point, Officer Toughill looked down Thomas Avenue and saw a woman fitting that description. The woman was brought back to the scene for questioning and identified as Wanda Ibrahim.

Officer Tagget photographed the crime scene and recovered a roll of toilet paper with a red stain found in the bathroom, a door handle with a red stain removed from the interior side of the front storm door, three pieces of mirror with a red stain found in the dining room and several other items. The items found in Dana's house were transmitted to the Criminalistics Laboratory for analysis. Latent prints were lifted from a red stained piece of mirror found in the dining room. The prints were determined to be the defendant's fingerprints. The results of the Criminalistics analysis revealed the defendant's DNA was on the piece of toilet paper and a swab of stain taken from the door handle.

Harrison was pronounced dead at 7:28 a.m. at the Hospital of the University of Pennsylvania. Doctor Ian Hood, the medical examiner, testified that Harrison died from multiple stab and slash wounds and the manner of death was homicide. He testified that seven slash wounds were about the forehead, face and cheeks and one stab wound was in the right side of the neck which severed the jugular vein. Harrison also had several small scratches and superficial incised wounds about the neck, back, shoulders, upper arm and his right thumb. Dr. Hood testified that [those] wounds are consistent with an implement such as [a] shard of glass rather than a knife.

An arrest warrant was issued for the defendant and the police made several attempts to apprehend the defendant in Philadelphia. The defendant was not apprehended until February 29, 2004, in Memphis, Tennessee. At trial, the defendant testified that four days before the murder he went to Memphis, Tennessee and was not in Philadelphia at the time of the murder. He also testified that he learned of the murder from family members who told him that he was accused of committing the murder.

Trial Court Opinion, 6/9/06, at 1–4 (record citations omitted). Thomas L. McGill, Jr., Esq. served as Johnson's trial counsel. PCRA Petition (10/20/2008).

3

On March 7, 2006, Johnson appealed the trial court's judgment of sentence and raised the following issues on direct appeal:

I. Should the Defendant be awarded an arrest of judgment on the charge of Murder in the First Degree where the Commonwealth did not prove beyond a reasonable doubt or through sufficient evidence, that the Defendant was guilty of Murder in the First Degree?

II. Should the Defendant be awarded a new trial as the result of a *[Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] violation wherein the Commonwealth failed to produce exculpatory evidence in the form of three separate mental health reports known by the Commonwealth to exist prior to trial and where those reports in and of themselves or through further investigation would have led to a mental health defense?

III. Should the Defendant be awarded a new trial where the Court, in error, ruled that the Defendant was competent to proceed with trial where the evidence of record would have revealed otherwise?

*Commonwealth v. Johnson,* 919 A.2d 289, 290 (Pa. Super. 2007). The Superior Court affirmed the trial court's judgment of sentence on March 7, 2007. *Id.* Lee Mandell, Esq. served as post-sentence motion and direct appeal counsel. PCRA Petition (10/20/2008). Johnson petitioned for *allocator* to the Pennsylvania Supreme Court; allocator was denied on October 24, 2007. *Commonwealth v. Johnson,* 934 A.2d 1276 (Pa. 2007)(Table).

The Court notes that Johnson submitted this PCRA petitions in a handwritten format; the Court responds only to legible and coherent aspects of Johnson's petitions. On March 26, 2008, Johnson filed a *pro se* PCRA petition; Johnson withdrew this petition on May 1, 2008. On October 1, 2008, Johnson filed another *pro se* PCRA petition, which the Court considers to be Johnson's first PCRA petition. PCRA Petition (10/01/2008). In his first PCRA Petition, Johnson claimed ineffective assistance of counsel, and that trial testimony of the Commonwealth's witnesses was "inconsistent." *Id.* In addition, Johnson claimed that, according

4

to the autopsy report, the perpetrator should have sustained injuries from using a shard of mirror to inflict the type of wounds inflicted upon the decedent. *Id.* Johnson avers, therefore, that his blood should have also been found at the crime scene. *Id.*

On March 18, 2009, Johnson filed a "second" or amended PCRA petition wherein alleging that the trial witnesses' statements were inconsistent; various issues with the filing division of the Philadelphia County Post-Trial Unit; that Johnson's jury was somehow not qualified to sit in judgment upon him; a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963) concerning exculpatory evidence of an "extradition bill" which proves that Johnson was not initially charged with "murder"; and a conflict of interest between Tennessee law enforcement agencies and Pennsylvania law enforcement agencies, among other claims of trial court error. PCRA Petition (03/18/2009).

Johnson also claimed the ineffectiveness of trial counsel due to trial counsel's alleged failure to utilized and develop "exculpatory" evidence; failure to properly interview and cross-examine witnesses; and failure to request bail, which resulted in Johnson not being able to go home with his family and friends before receiving a life sentence. PCRA Petition (03/18/2009). Johnson claimed the ineffectiveness of direct appeal counsel due to direct appeal counsel's failure to raise meritorious claims on direct appeal. *Id.*

Daniel A. Rendine, Esq. was appointed and entered his appearance as Johnson's PCRA counsel on November 12, 2009. After filing a "Motion to Compel Court Appointed Counsel to Furnish Copies of Transcripts," Johnson filed a "Notice of Waiver of the Rights of the Assistance of Counsel" on February 3, 2011. The instant PCRA Court granted Johnson's Motion to remove Mr. Rendine and appointed Barbara Ann McDermott, Esq. as new PCRA counsel on March 10, 2011. On March 16, 2011, Johnson filed a "Motion for Expedition of Case and

5

Removal of Court Appointed Counsel." On August 18, 2011, the Court ordered that all mental health evaluations of Johnson be released to Ms. McDermott for review. *Commonwealth v. Johnson*, CP-51-CR-0801541-2004 (Pa. Com. Pl. August 18, 2011)(order granting PCRA counsel for release of mental health evaluations). Johnson then filed another "Motion for Expedition of Case and Removal of Court Appointed Counsel"; after several listings and a Grazier Hearing,[1] Ms. McDermott was allowed to withdraw as Johnson's PCRA Counsel on January 25, 2012. N.T. (11/17/2011). Joseph Scott O'Keefe was appointed as Johnson's PCRA Co-Counsel on January 26, 2012.

On May 14, 2012, Johnson filed a third PCRA petition wherein alleging that the trial court improperly charged the jury on an element of third degree murder; and improperly facilitated the admission of DNA evidence fabricated by the Police. PCRA Petition (05/14/2012). Johnson also claimed the ineffectiveness of trial counsel for trial counsel's failure to inform Johnson of his right to plead guilty to a lesser degree, namely third degree murder; and for failing to object to the fact that the witnesses were not read their Fifth Amendment Rights. As to both counsel, Johnson claimed that each pursued meritless defenses at trial and on direct appeal. *Id.* Johnson's third PCRA petition was not counseled by Mr. O'Keefe; Johnson states that he indeed murdered the decedent, but that Johnson seeks PCRA relief to plead guilty to third degree murder *nunc pro tunc. Id.*

Mr. O'Keefe was removed as Johnson's PCRA co-counsel on June 18, 2012 and David Scott Rudenstein, Esq. was appointed PCRA counsel on August 16, 2012. Mr. Rudenstein was appointed pending the scheduling of another Grazier Hearing. Meanwhile, Johnson filed another "Notice of Waiver of Rights of Suit and Supplemental PCRA Petition" on August 29, 2012. Mr.

---

[1] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

6

Rudenstein was allowed to withdraw as PCRA counsel, leaving Johnson to proceed *pro se* for the remainder of his PCRA review.

On February 8, 2013, the Commonwealth filed its Motion to Dismiss Johnson's PCRA Petition. After independent review, and pursuant to Pa.R.Crim. P. 907, the Court issued a Notice of Intent to Dismiss Johnson's PCRA petition as meritless; the Court dismissed Johnson's PCRA petition without a hearing. Johnson filed a response to the Court's Notice of Intent to Dismiss his PCRA petition on May 14, 2013. The Court dismissed Johnson's PCRA petition on May 20, 2013. Johnson appealed the dismissal of his PCRA petition on June 13, 2013. The Court ordered Johnson to file a Concise Statement of Matters Complained of pursuant to Pa.R.A.P. 1925(b) ("Statement of Matters Complained of"); Johnson complied and filed his Statement of Matters Complained of wherein stating, as best as the Court could discern, the following claims of error:

1. The PCRA Court is in violation of various sections of "Canon Law" for failing to withdraw due to the trial court's errors; because prison officials misplaced some of Johnson's documents; and for not providing Johnson with a "speedy trial";

2. The PCRA Court failed to order a continuance of Johnson's PCRA so that Johnson could submit a first degree murder argument;

3. Johnson details a "breakdown" in the criminal administration process evidenced by the Commonwealth and the Court acting in "concert";

4. The PCRA Court erred in not scheduling an evidentiary hearing on his PCRA petitions;

5. The Trial Court erred in not instructing the jury on the "greater and lesser included offense of third degree murder";

6. Trial Counsel was ineffective in no objecting to the Trial Court's jury instruction;

7. The Trial Court erred in not providing a "speedy trial";

7

8. The Trial Court erred in allowing "fabricated" DNA to be admitted as evidence;

9. Trial Counsel was ineffective for not objecting to the "fabricated" DNA evidence;

10. Johnson was not read his Miranda rights before being interrogated;

11. Trial Counsel was ineffective for not objecting to hearsay testimony regarding police records;

12. Trial Counsel was ineffective for not raising his own ineffectiveness;

13. Trial Counsel was ineffective in not challenging Johnson's extradition from Memphis, Tennessee;

14. The PCRA Court erred in dismissing Johnson's PCRA because Johnson is "entitled to exoneration of first degree murder conviction and discharge from custody on double jeopardy grounds";

15. The PCRA Court failed to recuse itself because the Court has an "appearance of bias for [the Court's] acquaintance with decedent's wife" and because the decedent is a former "county correctional officer;"

16. Trial Counsel was ineffective for not objecting to the mandatory sentencing guidelines, which resulted in Johnson receiving a life sentence.

A discussion ensues:

## II. DISCUSSION

### A. Legal Issues

#### 1. Johnson has waived all issues not properly raised in his 1925(b) Statement

It is well settled that when the trial court orders an appellant to submit a 1925(b) Statement, it is a crucial component of the appellate process. *Commonwealth v. Lord,* 553 Pa. 415, 417 (1998). Pa.R.A.P. 1925(b) requires that the statement of issues complained of shall be concise and set forth only those rulings or errors that appellant intends to challenge. Pa.R.A.P. 1925(b)(4)(i). This rule guards against lengthy and incoherent statements that impede appellate

8

review. Issues not raised in accordance with the provisions of Pa.R.A.P. 1925(b) are waived. Pa.R.A.P. 1925(b)(4)(vii). Although the number of issues, standing alone, is not grounds for finding such waiver, the issues raised in the 1925(b) Statement must be "non-redundant" and "non-frivolous." Pa.R.A.P. 1925(b)(4)(iv).

It is also well settled that when the trial court orders an appellant to submit a 1925(b) Statement, that statement must indicate, with *specificity*, the error to be addressed on appeal. *Commonwealth v. McCree*, 857 A.2d 188, 192 (Pa. Super. 2004) (emphasis added). This rule guards against vague statements which require the Court to guess which issues are being raised on appeal. *Id.* Such vague and nonspecific 1925(b) Statements do not provide enough for the Court to conduct a meaningful review of the issues, and are the functional equivalent of no 1925(b) Statement at all. *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001). Furthermore, even if by chance the trial court correctly guesses the issues Appellant raises on appeal and writes an opinion pursuant to that supposition, the issues are still waived. *Commonwealth v. Heggins*, 809 A.2d 908, 911 (Pa. Super. 2002).

Here, the Court and the Commonwealth had to literally guess what issues Johnson was seeking to raise in his handwritten PCRA Petitions. The Court, understanding that Johnson proceeds *pro se*, went to great lengths to scour a voluminous record to discern what issues Johnson might be raising, both in the underlying PCRA Petition and this appeal. This is not the Court's usual custom. Even if the Court did guess Johnson's PCRA claims, all of them are waived on appeal for his failure to comply with Pa.R.A.P. 1925(b).

2. **Nevertheless, the Court did not err in dismissing Johnson's PCRA Petition; Johnson failed to demonstrate that he was entitled to PCRA relief by a preponderance of the evidence.**

### i. PCRA Governing Principles

Under *42 Pa. C.S. § 9543*, commonly known as the Post Conviction Relief Act, a petitioner must plead and prove by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in *42 Pa. C.S. § 9543(a)(2)*. 42 Pa. C.S. § 9543(a)(2); *Commonwealth v. Koehler*, 36 A.3d 121, 131-132 (Pa. 2012). Relevant to the instant PCRA petition is whether Johnson proved:

(1) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States, which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; [or]

(2) Ineffective assistance of counsel which in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

42 Pa. C.S. § 9543(a)(2)(i)-(ii).

To prove a violation of the Constitution of this Commonwealth or the Constitution or law of the United States, a petitioner must specifically set forth a constitutional violation of rights and how that violation so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Chambers*, 852 A.2d 1197 (Pa. 2004)(resolving a PCRA issue of whether failure to allege every element of a crime of Second Degree murder in a criminal information is a violation of constitutional rights and affirming trial court's dismissal of PCRA claim).

To prove an ineffective assistance of counsel claim, a petitioner must prove that: (1) the underlying issue is of arguable merit; (2) that counsel's actions lacked an objective reasonable

10

basis; and (3) that the petitioner was prejudiced by counsel's act or omission. *Koehler*, 36 A.3d at 132 (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). For a claim to have arguable merit, a petitioner must prove "that the underlying legal claim ...has 'arguable merit.' " *Commonwealth v. Steele*, 961 A.2d 786, 821 (Pa. 2008)(emphasis in original). In regards to prejudice, the third prong of the ineffective assistance of counsel test, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." *Koehler*, 36 A.2d at 132. The failure to show any prong of this test will cause the entire ineffective assistance of counsel claim to fail. *Id.* at 132. Furthermore, counsel is presumed to be effective; the appellant has the burden of proving otherwise. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008).

In addition, a petitioner must prove the ineffectiveness of each counsel on its own merit. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). For example, a petitioner may allege that appellate counsel is ineffective due to the manner in which appellate counsel pursued a direct appeal, and that appellate counsel is effective for failing to raise trial counsel's ineffectiveness. *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011). The later claim is known as a "layered" ineffectiveness claim, which must be demonstrated as follows:

> [A] petitioner must plead in his PCRA petition that his prior counsel, whose alleged ineffectiveness is at issue, was ineffective for failing to raise the claim that the counsel who preceded him was ineffective in taking or omitting some action. In addition, a petitioner must present argument ... on the three prongs of the *Pierce* test as to each relevant layer of representation.

*Commonwealth v. Tedford*, 960 A.2d 1, 13 (Pa. 2008)(quoting *Commonwealth v. McGill*, 832 A.2d 1014, 1023 (Pa. 2003); *Paddy*, 15 A.3d at 443. However, post-*Grant*, a petitioner must generally wait until PCRA review to raise claims of trial counsel ineffectiveness. *Grant*, 813 A.2d at 728.

11

Under the *42 Pa. C.S. § 9543*, a petitioner must plead and prove by a preponderance of the evidence that issues raised in his or her PCRA petition have not been previously litigated or waived. 42 Pa. C.S. § 9543(a)(3). As stated in *Koehler*, "[a]n issue has been previously litigated if 'the highest appellant court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue'...A PCRA claim is waived 'if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post [-] conviction proceeding.' " *Koehler*, 36 A.3d at 131 -132 (citations omitted). Where a claim has been previously litigated, a petitioner is not entitled to collaterally attack that same issue via the PCRA system. The Court notes that an ineffective assistance of counsel claim related to a previously litigated issue is a distinct legal claim. *Commonwealth v. Collins*, 888 A.2d 564 (Pa. 2005).

Where, an issue has not been litigated, a petitioner must prove "that the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." *Id.* at §9542(a)(4). In other words, where an issue has not been litigated, that issue is waived and the petitioner may only seek relief for the waived issue through raising an ineffective assistance of counsel claim. *Commonwealth v. Williams*, 730 A.2d 507, 511 (Pa. Super. 1999)(stating that "ineffective assistance of counsel will excuse waiver under *42 Pa.C.S.A. §9542(a)(3)(iii)* only with regard to claims of ineffective assistance of counsel at trial and on direct appeal and provided the standards announced in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987) and its progeny are met"). With these principles in mind, the Court now turns to Johnson's specific claims on PCRA.

12

### ii. Johnson is not entitled to PCRA Relief for claims that have been previously litigated.

Johnson may not utilize the PCRA process to collaterally attack the disposition of issues previously raised and litigated on direct appeal. 42 Pa. C.S. § 9543(a)(3). An issue has been previously litigated if:

> (2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or

> (3) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence

42 Pa.C.S. § 9544(a)(2)-(3); *Tedford*, 960 A.2d at 14 (citations omitted); *Koehler*, 36 A.3d at 131 -132 (citations omitted). Here, as best as the Court can discern from Johnson's handwritten PCRA petitions and 1925(b) Statement, Johnson seeks relief on PCRA petition for issues that have been previously litigated. To the extent that Johnson claims that the evidence adduced at his jury trial was insufficient to prove first degree murder; that the Commonwealth failed to produce exculpatory mental health reports; and that the trial court erred in determining that Johnson was competent to stand trial; these claims have all been previously litigated on appeal to the Superior Court. *[Jamiel] Johnson*, 919 A.2d at 290; *Collins*, 888 A.2d at 570 (Pa. 2005)(stating that *§9544(a)(2)* "prevents the relitigation of the same legal ground under alternative theories or allegations"). The Pennsylvania Supreme Court denied allocator of Johnson's claims. *[Jamiel] Johnson*, 934 A.2d at 1276. The highest appellate court in which Johnson could have had review as a matter of right has ruled on the merits of these issues. This comprises the Court's review of any and all claims related to the *trial court's* disposition on the sufficiency of Johnson's first degree murder conviction; *Brady* issues related to Johnson's mental health evaluations; and the trial court's determination that Johnson was competent to stand trial.

13

### iii. Johnson is not entitled to PCRA Relief for claims that have been waived.

Johnson may not obtain PCRA relief on claims that have been waived. An issue has been waived if "the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S. § 9544(b). To the extent that Johnson now claims on PCRA petition that the *trial court* allegedly erred in not instructing the jury on lesser included offenses; failing to conduct a speedy trial; allowing "fabricated" DNA evidence to be admitted at trial; allowing inconsistent witness testimony; admitting testimony related to autopsy reports; empanelling an incompetent jury; and failing to rule on an extradition bill's admissibility due to a *Brady* violation; and admitting double hearsay in the form of police statements, all of these claims are waived. *Collins*, 888 A.2d at 570; *Commonwealth v. Gwynn*, 943 A.2d 940, 944 n. 4 (Pa. 2008)(applying the definition of issues "previously litigated" to issues "waived"); *Commonwealth v. Albrecht*, 720 A.2d 693 (Pa. 1998). To the extent that Johnson failed to allege either trial counsel or direct appeal counsel ineffectiveness related to the waived claims in the instant PCRA Petition, ineffectiveness is now also waived on PCRA Appeal. *Tedford*, 960 A.2d at 13-14; *Paddy*, 15 A.3d at 443, 450; *Commonwealth v. Santiago*, 855 A.2d 682, 691 (Pa. 2004)(stating that issues not raised in a PCRA Petition cannot be raised for the first time on PCRA appeal). This comprises the Court's review of any and all PCRA claims that are waived.

### iv. Johnson failed to demonstrate that he is entitled to PCRA relief regarding alleged ineffectiveness of his trial counsel.

To prove an ineffective assistance of counsel claim, a petitioner must prove that: (1) the underlying issue is of arguable merit; (2) that counsel's actions lacked an objective reasonable

14

basis; and (3) that the petitioner was prejudiced by counsel's act or omission. *Koehler*, 36 A.3d at 132 (citing *Pierce*, 527 A.2d at 975).

### Trial Counsel's alleged failure to develop "exculpatory" evidence

Johnson claims that his trial counsel was ineffective for failing to utilize and develop "exculpatory evidence." "Exculpatory evidence" is evidence that "extrinsically tends to establish defendant's innocence of the crime charged...." *Commonwealth v. Gee*, 354 A.2d 875, 878 (Pa. 1976), *overruled on other grounds* by *Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986). Here, Johnson has failed to "plead and prove" his PCRA claim of trial counsel ineffectiveness related to the development of "exculpatory" evidence.

To the extent that Johnson seeks to raise a veiled *Brady* claim related to his mental health evaluations, this issue has already been litigated. *[Jamiel] Johnson*, 919 A.2d at 290. To the extent that Johnson seeks to raise ineffectiveness claim related to "exculpatory" evidence related to his mental health evaluations or otherwise, these claims are all without merit. Johnson fails to explain how trial counsel could have developed evidence tending to establish Johnson's innocence for the commission of the offense which Johnson admits he committed. (05/14/2012). Commonwealth Mot. to Dismiss ("Exhibit B" in Johnson's handwritten apologizing for killing Mr. Harrison Wiggins and requesting the ability to plead guilty to third degree murder *nunc pro tunc* so that he can receive a lesser sentence than life).

### Trial Counsel's alleged failure to properly interview and cross-examine witnesses

Johnson claims that trial counsel was ineffective for failing to properly interview and cross-examine witnesses. To reiterate, Johnson must show that this trial counsel's performance was deficient and that such deficiencies prejudiced Johnson's defense. *Koehler*, 36 A.2d at 132. Johnson does not explain how he believes trial counsel was deficient in cross-examining the

15

Commonwealth's witnesses in this matter. *Commonwealth v. Sattazahn*, 952 A.2d 640, 662-663 (analyzing a claim of trial counsel ineffectiveness regarding cross-examination where the petitioner specifically explained his claim). Instead, Johnson makes a broad claim that trial counsel somehow failed to draw out the inconsistencies in the witnesses testimony at trial. PCRA Petition (10/01/2008).

Here, the record is clear that trial counsel cross-examined the Commonwealth's witnesses and went to great lengths to draw out any inconsistencies in their various testimonies. N.T. (09/13/2005) at 117-125; 181-195; 228-235; 250-252; N.T. (09/16/2005) at 80-115; 150-155, 162-164, 195-200; N.T. (09/19/2005) at 31-45, 68-69, 93-96; 112-118, 129-130. Johnson's trial counsel even re-crossed some of the Commonwealth's witnesses. N.T. (09/13/2005) at 201-204; 228; N.T. (06/16/2005) at 125-128. Johnson's trial counsel argued that the inconsistencies in the witness testimony supported a finding of acquittal; the trial court denied Johnson's acquittal motion and the case went to jury verdict. N.T. (09/19/2005) at 132-134, 136-137. Furthermore, the trial court instructed the jury on how to consider inconsistent statements made by witnesses. N.T. (09/20/2005) at 131-132. The jury was free to draw their own conclusions as to the inconsistencies brought out by Johnson's trial counsel; their decision to convict Johnson of first degree murder does not mean that trial counsel was ineffective. Johnson's claim that trial counsel was ineffective for failing to properly cross-examine witnesses is without merit.

**Trial Counsel's alleged failure to request bail**

Johnson claims that trial counsel was ineffective for failing to request bail, which resulted in Johnson not being able to go home with his family and friends one more time before receiving a life sentence. This claim is not a cognizable PCRA claim. A petitioner must plead and prove by a preponderance of the evidence that his *conviction* or *sentence* resulted from the

16

ineffectiveness of counsel. 42 Pa. C.S. § 9543. Johnson fails to point this Court's attention to how an alleged failure of trial counsel to request bail is even remotely related to Johnson's ultimate *conviction* of first degree murder and possessing instruments of crime and *sentence* of life imprisonment. Therefore, this PCRA claim is meritless.

Furthermore, the Court notes the following principles regarding bail: 1) the "fundamental purpose of bail is to secure the presence of the accused at trial," and that bail may be denied if, "upon proof shown, the court reasonably concludes the accused will not appear for trial regardless of the character or the bail, then in such an instance bail may properly be denied, regardless of the nature of the charges." *Commonwealth v. Truesdale*, 296 A.2d 829, 836 (Pa. 1972); 2) it is well settled that, in general, there is no right to bail after a guilty verdict where denial of bail is not "arbitrary or discriminatory and is founded on a sound, reasonable, basis." *Commonwealth v. Fowler*, 304 A.2d 124, 126 (Pa. 1973); but that 3) "when a defendant is found guilty of an offense which is punishable by death or life imprisonment, the defendant shall not be released on bail." Pa.R.Crim.P. 521. A conviction of first degree murder is an offense punishable by death or life imprisonment. 18 Pa.C.S. § 1102.

**Trial Counsel's alleged failure to inform Johnson of "right" to enter an open guilty plea to third degree murder.**

This claim gets to the heart of Johnson's PCRA Petition. Essentially, Johnson seeks a new trial so that he can plead guilty to third degree murder *"nunc pro tunc"*, which Johnson believes would result in a sentence lesser than life imprisonment. Johnson claims that his trial counsel was ineffective for not informing Johnson of his "right" to enter an open guilty plea to third degree murder. First degree murder is "a criminal homicide" which is "committed by an intentional killing." 18 Pa.C.S. § 2502(a). As stated above, first degree murder is an offense punishable by death or life imprisonment. 18 Pa.C.S. § 1102(a). Third degree murder is a

17

catchall charge of murder generally and is defined as "all other kinds of murder of the third degree...a felony of the first degree." 18 Pa.C.S. § 2502(c). Third degree murder is an offense punishable by imprisonment for up to forty (40) years. 18 Pa.C.S. § 1102(d). There is clearly a difference between a conviction of first degree or third degree murder. At trial, Johnson pled not guilty to "murder." N.T. (09/13/2005) at 62. Johnson also pled not guilty to possessing instruments of crime. *Id.* at 62-63. Johnson elected to be tried by a jury; Johnson was tried before a jury on the charges of murder in the first degree, murder in the third degree and possessing instruments of crime.

However, whether or not a defendant pleads guilty to third degree murder, the Commonwealth has a right to have either a jury or the Court determine the degree of guilt. Pa.R.Crim.P. 590(C) (see "Note"); *Commonwealth v. White*, 910 A.2d 648, 662 (Pa. 2006). This is because a guilty plea to third degree murder is "simply an acknowledgement by a defendant that he participated in certain acts with criminal intent." *White*, 910 A.2d at 661 (citing *Commonwealth v. Mitchell*, 599 A.2d 624, 626 (Pa. 1991). Therefore, a guilty plea to third degree murder "dispenses with the need to determine whether the defendant committed murder," leaving only the issue of "whether the homicide was murder of the first, second or third degree, or voluntary manslaughter." *Id.* (citing *Commonwealth v. Myers*, 392 A.2d 685, 687 (Pa. 1978).

Here, the record is clear that Johnson was charged with first and third degree murder; the trial court gave both a first and third degree murder jury instruction. N.T. (09/21/2005) at 10-11; N.T. (09/20/2005) at 90-91; 143-149. The jury found Johnson guilty of first degree murder. N.T. (09/21/2005) at 21-22. Johnson's claim of ineffectiveness regarding his "right" to plead guilty is to third degree murder is meritless. Furthermore, whether Johnson pled guilty to third degree murder is of no moment; the jury found Johnson guilty of first degree murder, rendering

18

the fact that trial counsel did not advise Johnson of his "right" to plead guilty to third degree murder; or murder generally, as non-prejudicial omission under the standards of trial counsel ineffectiveness. *Koehler*, 36 A.3d at 132 (a PCRA petitioner must prove that he or she was prejudiced by counsel's act or omission).

**Trial Counsel's alleged failure to object to a deficient third degree murder jury instruction**

Johnson claims that his trial counsel was ineffective for failing to object to the trial court's allegedly deficient third degree jury instruction. Johnson appears to have two issues with the trial court's jury instruction on third degree murder: 1) that the evidence adduced at trial did not warrant an instruction on third degree murder; and 2) that the trial court failed to instruct the jury on the necessary element of malice. As to the first issue, Johnson's claim is meritless. The Superior Court has already affirmed the trial court's determination that the evidence adduced at trial supported a conviction of first degree murder; third degree murder is murder generally, which is a lesser included offense of first degree murder. *Commonwealth v. Watson*, 512 A.2d 1261, 1266 (Pa. Super. 1986)(citing *Commonwealth v. Polimeni*, 378 A.2d 1189 (Pa. 1977). Clearly the evidence in this matter warranted a jury instruction for third degree murder. *Commonwealth v. Thomas*, 717 A.2d 468, 479-481, 483 (Pa. 1998)(discussing a jury instruction for third degree murder); *Watson*, 512 A.2d at 1266 (reasoning "that evidence sufficient to support a first degree murder conviction is, *a fortiori*, sufficient to support a verdict of third degree murder").

Second, the record is clear that the trial court indeed instructed the jury as to the element of "malice" which is necessary for all charges of murder, including third degree murder. *Thomas*, 717 A.2d at 479-481 (explaining that the Commonwealth must establish a malicious killing to prove third degree murder); N.T. (09/20/2005) at 143-146. The trial court even re-read

19

the murder charges upon the jury's request. N.T. (09/21/2005) at 10-16. This claim is without merit.

### Trial Counsel's alleged failure to object to "fabricated" DNA evidence

Johnson next claims that "the prosecutrix, trial counsel, and trial court facilitated admission of police fabricated DNA & fingerprint evidence." PCRA Petition (05/14/2012). Johnson does not explain his claim. The record is clear that the DNA evidence admitted at trial was not "fabricated." Upon Johnson's request, the trial court issued an order allowing an independent lab to test the DNA evidence in this matter. N.T. (09/13/2005) at 63-64. Pending the results of the independent court-ordered DNA test, the trial court accepted the following testimony regarding DNA evidence: 1) that evidence found at the scene of the crime was sent to the Criminalistics for testing; 2) the results of the Criminalistics report that the evidence found was human blood; 3) that a vial of blood was taken from the decedent and Johnson for DNA testing; 4) the process for testing DNA evidence; 5) that a source of the blood found at the crime scene matched the decedant's blood; 6) and that the source of the blood found at the crime scene matched Johnson's blood. N.T. (09/12/2005) at 12; N.T. (09/13/2005) at 156-157; N.T (09/16/2005) at 208-212, 215-216, 219, 222-225, 228-229; N.T. (09/19/2005) at 73; N.T. (09/19/2005) at 79-93. As for the independent court-ordered DNA test, the record is clear that trial counsel decided not to call a defense witness to testify regarding the results of the independent analysis because one of the evidence swabs did not have testable material. N.T. (09/19/2005) at 198-205; N.T. (09/20/2005) at 1-11.

The record is also clear that Johnson disagreed with the results of the Criminalistics DNA testing. N.T. (09/19/2005) at 97-99. Essentially Johnson believes, as he stated at trial, that more of his blood should have been found on the instruments of crime in this matter, namely the

20

shards of glass used to stab the decedent. N.T. (09/19/2005) at 97, 183, 187, 189, 195-196. Johnson claims that he was framed by the Commonwealth on the lack of his blood at the crime scene. *Id.* In short, Johnson's claim that trial counsel failed to object to "fabricated" evidence is without merit. The DNA evidence was not fabricated just because Johnson thinks that more of his blood should have been at the scene. Furthermore, the Court reiterates that this was a jury trial; Johnson had the opportunity to tell the jury his account of the facts in this case in his own words. N.T. (09/19/2005) at 180-197. The jury heard everything Johnson had to say and found him guilty of murder in the first degree.

### Trial Counsel's alleged failure for not raising his own ineffectiveness

Johnson claims that his trial counsel was ineffective for failing to raise his own ineffectiveness. This claim is without merit. In general, a petitioner should wait to raise claims of trial counsel ineffectiveness on collateral PCRA review, even where trial counsel and direct appeal counsel are different. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). Furthermore, counsel cannot raise this own ineffectiveness. *Commonwealth v. Hughes*, 865 A.2d 761, 775 n. 7 (Pa. 2004). Therefore, trial counsel could not possibly be ineffective for failing to raise his or her own ineffectiveness.

### Trial Counsel's alleged failure to challenge Johnson's extradition from Memphis, Tennessee

Johnson claims that either trial counsel was ineffective for failing to challenge Johnson's extradition from Memphis, Tennessee; or Extradition Counsel's handling of Johnson's extradition was ineffective. Either way, claims related to Johnson's extradition are not cognizable under the PCRA. A petitioner must plead and prove by a preponderance of the evidence that his *conviction* or *sentence* resulted from the ineffectiveness of counsel. 42 Pa. C.S. § 9543. Johnson fails to point this Court's attention to how his extradition from Memphis relates

21

to Johnson's ultimate *conviction* of first degree murder and possessing instruments of crime and *sentence* of life imprisonment in Pennsylvania. Therefore, this PCRA claim is meritless.

### Trial Counsel was ineffective because Commonwealth's witnesses were allegedly not read their Fifth Amendment rights

Johnson next claims that trial counsel was ineffective due to the fact that the Commonwealth's witnesses were not read their Fifth Amendment rights. This claim is without merit. First, a blanket Fifth Amendment privilege against compulsory self-incrimination is generally not permitted. *Commonwealth v. Kirwan*, 847 A.2d 61, 65-66 (Pa. Super. 2004). Instead, a witness must invoke this right before responding to a particular question. *Id.* Second, Johnson cannot assert the Fifth Amendment privilege for someone else. See *Commonwealth v. McGrogan*, 568 A.2d 924, 927-928, 930 (Pa. 1990)(discussing basic underpinnings of the Fifth Amendment privilege against self-incrimination).

In short, Johnson has failed to make a claim of trial counsel ineffectiveness. Therefore, this Court properly dismissed his PCRA Petition. The Court makes a concluding observation about Johnson's trial. The record is clear that Johnson decided to pursue an alibi defense over his trial counsel's advice to not do so. N.T. (09/19/2005) at 146-148; 180-197. Because of Johnson's decision to get on the witness stand and claim that he was in Memphis, Tennessee during the murder of the decedent, trial counsel was hampered in both the evidence he could present at trial and the selection of jury instructions that could have been in Johnson's favor. N.T. (09/20/2005) at 29-41. Johnson's decisions will not be held to be trial counsel's ineffectiveness.

22

**v. Johnson failed to demonstrate that he is entitled to PCRA relief regarding alleged ineffectiveness of his appellate counsel.**

The Court will now address Johnson's claims to appellate counsel ineffectiveness.

**Appellate Counsel ineffectiveness for pursuing meritless mental health defenses on appeal**

Johnson claims that his direct appeal counsel was ineffective for pursing defenses on appeal related to Johnson's mental health, namely: 1) Brady violation related to Johnson's mental health evaluations; and 2) the claim that Johnson was incompetent to stand trial. Specifically, Johnson states:

> Direct appeal counsel was ineffective...for [pursuing] a meritless defense of a Brady violation when the three mental health reports [ ] are of [Johnson] admitting he was faking delusions and hallucinations of psychotic diseases to try to get the case [ ] thrown out! The other meritless defense direct appeal counsel raised was an incompetent to stand trial defense, when the [Johnson] decided to not be in the courtroom during trial as part of a scheme in using a U.C.C. defense albeit the (typical) defense existed or not. [Johnson] knew what was going on in the courtroom and how to defend himself with Constitutional and statutory law the State and Federal courts use everyday! Despite Dr. Stanton, the Court psychologist, stated that [Johnson] could understand who his attorney is but that he wasn't sure whether [Johnson] would cooperate with his attorney.

PCRA Petition (05/14/2012). To reiterate, to prove ineffective assistance of counsel, Johnson has to prove that counsel's actions lacked an objective reasonable basis. *Koehler*, 36 A.3d at 132 (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). Johnson has failed to demonstrate that appellate counsel's decision to pursue claims based on mental health were "meritless" considering the fact that Johnson himself purposefully tried to "defend" himself against a first degree murder conviction by appearing to have mental health issues. Johnson's strategy did not work; now Johnson admits on PCRA that he faked mental health issues and now seeks a new trial based on appellate counsel ineffectiveness for pursuing the very issue that

23

Johnson sought to be raised on appeal. Johnson's decisions will not be deemed appellate counsel ineffectiveness.

### Appellate Counsel's cumulative ineffectiveness

"No number of failed claims may collectively attain merit if they could not do so individually." *Commonwealth v. Bracey*, 795 A.2d 935, 945 (Pa. 2001)(quoting *Commonwealth v. Williams*, 615 A.2d 716, 722 (Pa. 1992)); *Commonwealth v. [Raymond] Johnson*, 966 A.2d 523, 532 (Pa. 2009). Johnson has failed to plead and prove any single claim that his appellate counsel was ineffective; therefore, Johnson's boilerplate claim that appellate counsel was generally and cumulatively ineffective must also fail.

### vi. The PCRA Court did not err in presiding over Johnson's PCRA Petition

### The Court did not delay in ruling on Johnson's PCRA

The Court will now address Johnson's claims of error made by the instant PCRA Court. Johnson claims that this Court erred in violating his right to a "speedy trial." This claim is without merit. First, a cursory inspection of the docket and record in this matter will reveal that, to the extent there is any delay in the disposition of this PCRA, Johnson's own court filings have produced this effect. Second, there is no "right" to a speedy trial within the context of PCRA petitions. *Commonwealth v. [Leroy]Thomas*, 44 A.3d 12, 22 (Pa. 2012). Third, while a due process claim is cognizable under the PCRA, the record does not support the contention that Johnson's due process rights were violated in the disposition of his PCRA Petition. *Commonwealth v. Burkett*, 5 A.3d 1260, 1276 (Pa. Super. 2010)(analyzing the four part test from *Barker v. Wingo*, 92 S. Ct. 2182 (1972) to determine whether PCRA petitioner's due process claim of a delay was meritorious).

24

**Furthermore, the Court did not err in dismissing Johnson's PCRA
without a hearing pursuant to *Pa.R.Crim. P. 907*.**

Under the Pennsylvania Rules of Criminal Procedure, a trial court may dismiss a PCRA petition without a hearing only if the Court determines that there are no genuine issues of material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings. Pa.R.Crim.P. 907. There is no absolute right to an evidentiary hearing on a PCRA petition. *Commonwealth v. [Jonathan Paul] Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). Indeed, if a Court can determine that appellant's claim of ineffective assistance of counsel does not meet all three prongs of the test for ineffectiveness without an evidentiary hearing, then "no purpose would be advanced by holding an evidentiary hearing." *Id.*

Here, the Court was able to determine that Johnson did not demonstrate any arguable merit to any of his claims of trial counsel ineffectiveness or appellate counsel ineffectiveness. Furthermore, Johnson did not demonstrate any prejudice by either trial counsel or appellate counsel's alleged ineffectiveness. Since Johnson did not meet any of the prongs for the test for ineffective assistance of counsel, no purpose would have been served by an evidentiary hearing. Lastly, Johnson did not demonstrate that there were violations of his constitutional rights. Therefore, the Court properly dismissed Johnson's PCRA Petition without an evidentiary hearing.

**Johnson's remaining miscellaneous claims of error against this
Court are without merit.**

Johnson claims that this Court has somehow violated the Pennsylvania Code of Judicial Conduct, otherwise known as Canon Law. These claims are without merit. To the extent that Johnson claims that the Court erred in declining his request for a continuance to put forth a first-

25

degree murder argument, this claim is without merit. First, Johnson misunderstands the purpose of PCRA petitions; he cannot now put forth a claim or argument that should have been raised on direct appeal. 42 Pa.C.S. § 9544(b). Second, Johnson has failed to fully explain what argument he would like to put forth as he was convicted of first degree murder. Again, this Court cannot and will not be put in a position to divine what Johnson is claiming on PCRA review. Lastly, to the extent that Johnson claims that this Court is somehow biased against him, the Court, to the best of its knowledge, has no knowledge of the decedent's wife or anyone else related to Johnson, his trial, or any of the events/people leading up to the crimes for which Johnson was tried.

## III. CONCLUSION

For the above reasons, this Court did not err in dismissing Johnson's PCRA Petition without a hearing. The Court's ruling should stand.

BY THE COURT:

LEON W. TUCKER, JUDGE

26

## COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### CRIMINAL TRIAL DIVISION

COMMONWEALTH v. JAMIEL JOHNSON    CP-51-CR-0801541-2004

Opinion

### PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s) and in the manner indicated below, which service satisfies the requirements of PA.R.CRIM.P. 114:

*Pro Se Defendant*

Jamiel Johnson
GK 4813
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112

*Type of Service:*    ( ) Personal   ( ) First Class Mail   ( X )  Certified

*District Attorney:*

Samuel Ritterman Esquire
PCRA Unit, District Attorney's Office
Widener Building
3 South Penn Sq.
Philadelphia, PA 19107

*Type of Service:*    ( ) Personal   ( X ) First Class Mail  ( )  Other

*Dated:*

_____
Judge's Signature